Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| HPN ELECTRONIC SERVICE INC. (MAJAR #01), ZHI YANG CHEN (MAJAR #027), ANTONIO L. COLÓN (MAJAR #036), JOSÉ MERCADO MÉNDEZ (MAJAR #037), TIAGO GAMING LLC (MAJAR #047), JESÚS SOLANO DÍAZ (MAJAR #052), ISLAND GAME CORP. (MAJAR #053), JAVIER HERNÁNDEZ DBA (MAJAR #056), ALWAYS 2021 LLC (MAJAR #068), MERCADO MUSIC AND ENTERTAIMENT CORP. (MAJAR #078), EXOTIC ANIMAL ENTERTAINMENT CORP. (MAJAR #091), Y GSM GAMING CORP. (MAJAR #092)<br><br>**Recurrentes**<br><br>v.<br><br>COMISIÓN DE JUEGOS DEL GOBIERNO DE PUERTO RICO<br>**Recurrida** | **TA2025RA00219** | **REVISIÓN ADMINISTRATIVA** Procedente de la Comisión de Juegos de Puerto Rico<br><br>Sobre: Revisión de Decisión Administrativa-Reglamento |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de octubre de 2025.

Comparecen los recurrentes, HPN Electronic Service, Inc., ZHI Yang Chen, Antonio L. Colón, José Mercado Méndez, Tiago Gaming LLC, Jesús Solano Díaz, Island Games Corp., Javier Hernández DBA, Always 2021 LLC, Mercado Music and Entertainment Corp., Exotic Animal Entertainment Corp. y GSM Gaming Corp., solicitando que revisemos los *Memorandos Núm. 2025-14 y 2025-14 Enmendado* de la Comisión de Juegos del Gobierno de Puerto Rico, en adelante, Comisión de Juegos o

recurrida. Sostienen los recurrentes que la recurrida reglamentó *de facto* a través de los memorandos, sin cumplir con el procedimiento requerido por Ley.

Por los fundamentos que expondremos a continuación, *desestimamos* el recurso de autos.

## I.

El 29 de junio de 2025, la Comisión de Juegos circuló el **Memorando Núm. 2025-14** a todos los operadores de máquinas de juegos de azar en ruta.[1] Mediante el mismo, instituyó el proceso para la notificación de ingresos, mediante la entrega de una planilla. Además, estableció los formatos para el pago del 22.5% de los ingresos que le corresponde a la recurrida. Unos días más tarde, el 16 de julio de 2025, la Comisión de Juego circuló el **Memorando Núm. 2025-14 Enmendado**, con el mismo fin.[2]

Por ello, el 5 de septiembre de 2025, los recurrentes presentaron ante nos un *"Recurso de Revisión Administrativa"*. En su escrito, las partes señalan los siguientes errores:

> **PRIMER ERROR:** Erró la Comisión de Juegos al imponer mediante los Memorandos Núm. 2025-14 y 2025-14 Enmendado la obligación de radicar inventarios detallados, planillas quincenales y un esquema de recaudos con distribución de ingresos, sin observar el procedimiento formal de reglamentación dispuesto en la LPAU, creando así un reglamento de facto carente de validez jurídica.
>
> **SEGUNDO ERROR:** Erró la Comisión de Juegos al aprobar y poner en vigor los Memorandos Núm. 2025-14 y 2025-14 enmendado sin contar con evidencia sustancial en el expediente que justificara la implantación de las normas allí dispuestas, ni evaluar las condiciones reales de la industria, la situación económica de los operadores y el efecto distorsionador de la operación continua de máquinas sin marbete. En ausencia de un récord claro y de un análisis razonado que sustentara la necesidad y proporcionalidad de dichas medidas, la decisión

---

[1] Apéndice del recurso, Anejo 2.
[2] Id., Anejo 1.

administrativa resulta arbitraria, irrazonable y contraria al principio de razonabilidad que rige la actuación administrativa bajo la LPAU.

Junto al recurso, los recurrentes radicaron ante este Tribunal una *"Moción en Auxilio de Jurisdicción y Solicitud de Paralización"*. En su escrito, solicitaron que ordenáramos la paralización inmediata de la ejecución y efectos de los memorandos. Ese mismo día, emitimos una *"Resolución"* declarando *"No Ha Lugar"* la solicitud en auxilio de jurisdicción. Además, concedimos a la recurrida hasta el 25 de septiembre de 2025 para presentar su posición con relación al recurso.

Así las cosas, el 25 de septiembre de 2025, la Comisión de Juegos presentó una *"Solicitud de Desestimación por Falta de Jurisdicción"*. De entrada, estos señalan que los memorandos impugnados ya no están vigentes, por haberse emitido un tercer memorando – Memorando 2025-17 – el 29 de julio de 2025, y en el que dispuso el proceso de los pagos quincenales.[3] Arguyen, además, que, aun sostenida la validez de la impugnación de los otros memorandos, los recurrentes recurrieron a este Foro fuera del término jurisdiccional para ello. A consecución, el 26 de septiembre de 2025 emitimos una *"Resolución"* para concederle diez (10) días a los recurrentes para presentar su posición en cuanto a la solicitud de desestimación.

Ahora bien, el 1 de octubre de 2025, los recurrentes presentaron una segunda *"Moción en Auxilio de Jurisdicción y Solicitud de Paralización"*. En la misma, indicaron que el día anterior la Comisión de Juegos había publicado en el periódico *Primera Hora* un aviso oficial de reglamentación. Según estos, la recurrida alertó que se proponía promulgar un reglamento para la confiscación de máquinas de juegos de azar. Los recurrentes

---

[3] Apéndice de la recurrida, Anejo 1.

sostienen que esto valida su contención que la recurrida actuó de manera ultra vires mediante los memorandos, cuya revisión se solicita. Por todo lo cual, solicitaron que paralizáramos los efectos y la ejecución de los mismos.

Sin embargo, mediante *"Resolución"* del 2 de octubre de 2025, declaramos la misma *"No Ha Lugar"*, y ordenamos a la parte recurrente a cumplir con la *"Resolución"* del 26 de septiembre de 2025. Así lo hicieron ese mismo día, mediante *"Moción en Oposición a Solicitud de Desestimación por Falta de Jurisdicción"*. En su escrito, las partes arguyen que el contenido de los memorandos creó una confusión jurídica. Por ello, en su recurso, plantearon por qué estos carecían de validez bajo dos (2) teorías de interpretación jurídica. Adicionaron, por otro lado, que, con relación a los planteamientos de ausencia de jurisdicción por los términos de revisión judicial, las partes sí recurrieron a mecanismos de agotamiento de remedio, previo a acudir a los foros judiciales.

Con el beneficio de los escritos presentados, y perfeccionado el recurso ante nos, procedemos a resolver.

## II.

### A. Revisión Administrativa

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Vázquez et al. v. DACo,* 2025 TSPR 56, 215 DPR ___ (2025); *Simpson, Passalacqua v. Quirós, Betances,* 214 DPR 370, 377 (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754

(2024); *Comisión Ciudadanos v. G.P. Real Prop.,* 173 DPR 998, 1015 (2008).

En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". *Simpson, Passalacqua v. Quirós, Betances*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 753; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 543 (2006); Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias administrativas. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); LPAUG, supra, secs. 9671-9677. A tales efectos, la Sección 4.1 de la LPAUG, supra, sec. 9671, dispone que el Tribunal de Apelaciones, mediante Recurso de Revisión, podrá revisar "órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos". Por su parte, la Regla 56 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 75, 215 DPR ___ (2025), dispone que este Foro podrá pasar juicio sobre "las decisiones, los reglamentos, las órdenes, las resoluciones y las providencias finales dictadas por organismos o agencias administrativas o por sus funcionarios o funcionarias, ya sea en su función adjudicativa o cuasi legislativa, conforme lo dispuesto en ley".

Por otro lado, el Art. 4.006, de la Ley de la Judicatura de 2003, en adelante, Ley Número 201-2003, 4 LPRA sec. 24y, establece en su inciso (c) la competencia del Tribunal de Apelaciones. A esos efectos, dispone que este Foro conocerá mediante recurso de revisión judicial, las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas.

*Simpson, Passalacqua vs. Quirós, Betances,* supra*; AAA v. UIA,* 200 DPR 903, 910-911 (2018); *Depto. Educ. v. Sindicato Puertorriqueño,* supra, pág. 543; *Procuradora Paciente v. MCS,* 163 DPR 21, 33-34 (2004).

La LPAUG, supra, sec. 9675 dispone que, "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal". *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018); *Torres Rivera v. Policía de PR,* 196 DPR 606, 627 (2016). Tanto la referida Ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley, y si la misma es legal y razonable. *Hernández, Álvarez v. Centro Unido,* 168 DPR 592, 616 (2006); *T–JAC* v. *Caguas Centrum,* 148 DPR 70, 80 (1999).

La Sec. 4.2 de la LPAUG, supra, sec. 9672, también establece que la revisión administrativa ante el Tribunal de Apelaciones se hará respecto a las órdenes o resoluciones finales, luego de que el recurrente haya agotado "todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente". Es decir, no serán revisables directamente a este Tribunal las órdenes o resoluciones interlocutorias de una agencia, esto es, aquellas que se emitan durante los procesos administrativos que se desarrollan por etapas, y no sean finales. A esos efectos, esta misma sección provee que la disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia.

Por su parte, la Sección 1.3 de la LPAUG, supra, sec. 9601, define "orden o resolución" como "cualquier decisión o acción

agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas, excluyendo órdenes ejecutivas emitidas por el Gobernador". Además, la precitada sección define "orden interlocutoria" como "aquella acción de la agencia en un procedimiento adjudicativo que disponga de algún asunto meramente procesal". *Simpson, Passalacqua vs. Quirós, Betances,* supra.

A pesar de que la LPAUG no define el término "orden o resolución final", esta contiene una descripción de lo que tiene que incluir para ser considerada final. *Simpson, Passalacqua vs. Quirós, Betances,* supra. En su Sección 3.14, supra, sec. 9654, este cuerpo estatutario requiere que se incluyan determinaciones de hecho y las conclusiones de derecho que fundamentan la adjudicación, además de añadir la advertencia del derecho a solicitar una reconsideración o revisión, según sea el caso. *J. Exam. Tec. Méd. v. Elías et al.,* 144 DPR 483, 489-490 (1997). Específicamente, el precitado Artículo reza de la siguiente manera:

> La orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso. La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley. La orden o resolución advertirá el derecho de solicitar la reconsideración ante la agencia o de instar el recurso de revisión como cuestión de derecho en el Tribunal de Apelaciones, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos. La agencia deberá especificar en la certificación de sus órdenes o resoluciones los nombres y direcciones de las personas naturales o jurídicas a quienes, en calidad de partes, les fue notificado

el dictamen, a los fines de que estas puedan ejercer efectivamente el derecho a la revisión judicial conferido por ley. La agencia deberá notificar con copia simple por correo ordinario o electrónico a las partes, y a sus abogados de tenerlos, la orden o resolución a la brevedad posible, y deberá archivar en autos copia de la orden o resolución final y de la constancia de la notificación. Una parte no podrá ser requerida a cumplir con una orden final a menos que dicha parte haya sido notificada de la misma.

[...]

LPAUG, supra, sec. 9654

El fiel cumplimiento de estos requisitos, procura "proteger a las agencias y evita[r] [que los tribunales interfieran] con sus dictámenes hasta que adquieran finalidad y sus efectos se puedan sentir de forma concreta sobre las partes". *Crespo Claudio v. O.E.G.,* 173 DPR 804, 814 (2008).

Por su parte, el Tribunal Supremo de Puerto Rico ha establecido que para que una orden emitida por una agencia pueda ser revisada ante el Tribunal de Apelaciones, deben cumplirse dos requisitos: (i) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia y (ii) que la resolución sea final y no interlocutoria. *Simpson, Passalacqua vs. Quirós, Betances,* supra. *Depto. Educ. v. Sindicato Puertorriqueño*, supra, pág. 543; *Procuradora Paciente v. MCS,* supra, págs. 34-35.

Ahora bien, señalamos que la LPAUG, supra, regula y codifica los trámites, facultades y responsabilidades de las agencias administrativas. *ACT v. Prosol et als.,* 210 DPR 897, 907 (2022). La Sección 4.2 de la LPAUG, supra, sec. 9672, establece el procedimiento y término para solicitar la revisión de órdenes y resoluciones de una agencia administrativa:

Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar

una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.
[...]

Véase, además, *Simpson, Passalacqua v. Quirós, Betances,* supra, pág. 378.

(Énfasis suplido).

Es decir, la parte que quede inconforme con el resultado de la decisión de una agencia que recaiga en su contra, tiene derecho a solicitar que un tribunal de mayor jerarquía revise la determinación administrativa que le afecte. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 753; *ACT v. Prosol et als.,* supra; *Asoc. Condómines v. Meadows Dev.,* 190 DPR 843, 847 (2014).

### B. Jurisdicción

Como es conocido, la jurisdicción es el poder o la autoridad que tiene un Tribunal para considerar y decidir casos o controversias que tiene ante sí. *Marcovic v. Meldon y otro,* 2025 TSPR 99, 216 DPR ___ (2025); *Mun. Río Grande v. Adquisición Finca,* 2025 TSPR 36, 215 DPR ___ (2025); *Freire Ruiz et al. v. Morales, Hernández,* 2024 TSPR 129, 215 DPR ___ (2024); *Mun. Aguada v. W. Const. y Recovery Finance,* 214 DPR 432, 448 (2024); *R & B Power Inc. v. Junta de Subastas ASG,* 213 DPR 685, 698 (2024); *Matos, Sostre v. Registradora,* 213 DPR 348, 354 (2023); *FCPR v. ELA et al.,* 211 DPR 521, 529 (2023); *Pueblo v. Torres Medina,* 211 DPR 950, 958 (2023); *Cobra Acquisitions, LCC v. Mun. Yabucoa et al.,* 210 DPR 384, 394 (2022); *Pueblo v. Rivera Ortiz,* 209 DPR 402, 414 (2022); *Adm. Terrenos v. Ponce Bayland,* 207 DPR 586, 600 (2021). Además, es norma reiterada en nuestro

ordenamiento, que "los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen". *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882 (2007). Véase, además, *Mun. Río Grande v. Adquisición Finca*, supra; *Freire Ruiz y otros v. Morales, Hernández,* supra; *Mun. Aguada v. W. Const. y Recovery Finance,* supra; *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012).

La jurisdicción se refiere a la capacidad que tiene un tribunal para atender y resolver controversias sobre determinado aspecto legal. *Rodríguez Rivera v. De León Otaño,* 191 DPR 700, 708 (2014). Ante la falta de jurisdicción, el tribunal debe así declararlo y proceder a la desestimación del recurso, toda vez que cualquier sentencia dictada sin jurisdicción es nula en derecho, pues la ausencia de jurisdicción es insubsanable. *Freire Ruiz y otros v. Morales, Hernández,* supra*; Pueblo v. Rios Nieves*, 209 DPR 264, 273 (2022); *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268 (2018); *Shell v. Srio. Hacienda*, 187 DPR 109, 123 (2012).

No es necesario que una o ambas partes cuestionen la jurisdicción de un tribunal, sino que es nuestro deber levantarlo *motu proprio*. Así lo establece la Regla 83 del Reglamento del Tribunal de Apelaciones, supra, págs. 109-110, la cual confiere facultad a este Tribunal para, a iniciativa propia o a petición de parte, desestimar un recurso de apelación o denegar un auto discrecional por cualquiera de los siguientes motivos:

> *(1) que el Tribunal de Apelaciones carece de jurisdicción;*
>
> (2) que el recurso fue presentado fuera del término de cumplimiento estricto dispuesto por ley sin que exista justa causa para ello;
>
> (3) que no se ha presentado o proseguido con diligencia o de buena fe;

(4) que el recurso es frívolo y surge claramente que no se ha presentado una controversia sustancial o que ha sido interpuesto para demorar los procedimientos, o

(5) que el recurso se ha convertido en académico.

Por otro lado, reconocemos que en nuestro ordenamiento jurídico se le reconoce a todo ciudadano el derecho estatutario a recurrir de las decisiones de un organismo inferior. *Isleta v. Inversiones Isleta Marina,* 203 DPR 585 (2019). Tal derecho, sin embargo, está sujeto a limitaciones legales y reglamentarias, entre las que se encuentra su correcto perfeccionamiento. *Isleta v. Inversiones Isleta Marina,* supra.

### C. Comisión de Juegos del Gobierno de Puerto Rico

La Ley de Máquinas de Juegos de Azar, en adelante, Ley Núm. 11, Ley Núm. 11 de 22 de agosto de 1933, 15 LPRA sec. 82 *et seq.*, reglamenta el uso de máquinas de juego de entretenimiento de adultos, las máquinas de juegos de azar o las conocidas "tragamonedas". Esta Ley "faculta a la Comisión a reglamentar y fiscalizar todo lo relacionado a la introducción, distribución, adquisición, venta, arrendamiento, transportación, ubicación, colocación, funcionamiento, mantenimiento, operación, uso, custodia y posesión de las máquinas" antes mencionadas. Ley Núm. 11, supra, sec. 83.

Ahora bien, históricamente, el Estado no ha sido efectivo en su deber de regular y fiscalizar el uso de este tipo de máquinas, por lo que ha realizado varios esfuerzos legislativos para regular y aumentar los recaudos del fisco y adelantar la política pública dirigida a maximizar los sistemas contributivos del país.[4] Por otro lado, se creó la Ley de la Comisión de Juegos del Gobierno de Puerto Rico, en adelante, Ley Núm. 81, Ley Núm. 81-2019, 15

---

[4] Este hecho surge de las expresiones legislativas en los proyectos de Ley que enmendaron este estatuto a lo largo de los años. Véase las Exposiciones de Motivos de la Ley 142-2005; Ley 77-2014; Ley 104-2022; Ley 42-2024 y la Ley 112-2024.

LPRA sec. 981 et seq. Este cuerpo normativo creó una Comisión para que esta presida y fiscalice sobre los asuntos relevantes a las apuestas autorizadas por Ley. Ley Núm. 81, supra, sec. 982a. Además, lo designó como el ente con jurisdicción para fiscalizar las facultades delegadas en la Ley Núm. 11. *Id.* Mediante la Ley Núm. 81, supra, entre otras, se enmendó la Ley Núm. 11, supra, con el fin de atemperar la misma a los varios cambios estatutarios sobre la industria en los pasados años.

Por ser relevante al caso de marras, señalaremos varias disposiciones según enmarcadas en ambos estatutos, que han sido objeto de un cauteloso y riguroso estudio por este Foro.

Para ejecutar sus facultades, la Sección 9 de la Ley Núm. 11, supra, sec. 84e, se dispuso que la Comisión de Juegos podrá expedir licencias para la operación de máquinas de juegos de azar, si determina, a base de toda la información disponible, que el solicitante satisface los criterios de concesión de licencia establecidos mediante Reglamento. En su sección anterior, esta prohibió la operación de máquinas sin la licencia y marbete debidamente emitida por la Comisión.

La Sección 10 y 29 de la Ley Núm. 11, supra, secs. 84f y 84z, establecen los pormenores para la solicitud de estas licencias, y lo relevante a la recaudación y distribución de los ingresos generados por las máquinas de juegos de azar. Entre lo dispuesto, surge que los dueños de estas máquinas deberán rendir informes quincenales sobre estas, y mediante los cuales reporten el ingreso generado por ellas. Además, deberán refrendar quincenalmente "el porciento perteneciente al Gobierno", el cual suma a un veintidós punto cinco por ciento (22.5%) de las ganancias. Sección 29 de la Ley Núm. 11, supra, sec. 84y. Como corolario de lo anterior, la Sección 10 de la precitada Ley dispuso que "[a] partir de la aprobación de esta Ley, la Comisión *establecerá los procesos y*

*documentación necesaria* para que los Dueños Mayoristas puedan refrendar el porciento perteneciente al Gobierno por medio de informes manuales quincenalmente".

Relevante a la responsabilidad tributaria de los dueños de máquinas de juegos de azar, el Artículo 2(1) Ley Num. 81, supra, sec. 982a esboza lo siguiente:

> La Comisión gozará de todos los poderes necesarios o convenientes para llevar a cabo y realizar los propósitos y disposiciones de esta Ley, incluyendo, pero sin limitarse a, las siguientes facultades:
>
> (1) Adoptar, autorizar o enmendar los reglamentos sobre todos los   asuntos bajo su jurisdicción, y regulará aquellos que rigen los   criterios y la concesión de licencias, la imposición de derechos, la  recaudación   de impuestos y cargos y el funcionamiento de los juegos autorizados por virtud de esta Ley, conforme a la Ley 38 2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

### D. Reglamentación Administrativa

En nuestro ordenamiento jurídico, la Asamblea Legislativa ha delegado en algunas agencias administrativas el poder cuasi legislativo de aprobar reglas o reglamentos. *R & B Power, Inc. v. Junta de Subastas ASG,* 213 DPR 685, 700-701 (2024); El poder de reglamentación es definido como el procedimiento seguido por una agencia para la formulación, adopción, enmienda o derogación de una regla o reglamento. *Íd.* Sección 1.3 (n) de la LPAUG, sec. 9603. De esta forma, las agencias administrativas se encuentran facultadas para adoptar reglas denominadas legislativas y no legislativas. *R & B Power, Inc. v. Junta de Subastas ASG,* supra, pág. 701; *Sierra Club v. Junta de Planificación,* 203 DPR 596, 605 (2019).

En lo pertinente, las reglas legislativas crean derechos, imponen obligaciones y establecen un patrón de conducta que

tiene fuerza de ley. *Íd.* Contrario a las reglas no legislativas, la Asamblea Legislativa ha sido consecuente al disponer un procedimiento específico para la aprobación, revocación y enmienda de las reglas legislativas. *Íd.* Ante ello, toda agencia que pretenda adoptar, enmendar o derogar una regla o reglamento, deberá cumplir con las disposiciones establecidas en la LPAUG, supra. *Íd*; *Asociación Maestros v. Comisión*, 159 DPR 81, 93 (2003).

Según la Sección 1.3(n) de la LPAUG, supra, sec. 9603, una Regla o Reglamento "[s]ignifica cualquier norma o conjunto de normas de una agencia que sea de aplicación general que ejecute o interprete la política pública o la ley, o que regule los requisitos de los procedimientos o prácticas de una agencia que tenga fuerza de ley. El término incluye la enmienda, revocación o suspensión de una regla existente". *R & B Power, Inc. v. Junta de Subastas ASG,* supra, pág. 702. Mientras que la Reglamentación "[s]ignifica el procedimiento seguido por una agencia para la formulación, adopción, enmienda o derogación de una regla o reglamento". *Id.*

Lo cierto es que una regla legislativa "impacta directamente a los ciudadanos en general y obliga con fuerza de ley a la agencia". *Ramirez v. Jta. Planificación,* 185 DPR 748 (2012); *Asociación de Maestros v. Comisión,* supra. En consecuencia, al adoptar este tipo de reglas las agencias deben observar estrictamente los requisitos de la LPAUG, supra, brindando la oportunidad a los ciudadanos de conocerlas y expresar cualquier reparo hacia ellas, antes de su aprobación final. *Tosado v. A.E.E.,* 165 DPR 377, 390 (2005). Una regla no legislativa, en cambio, es "una expresión de la agencia que ofrece una aclaración de la ley que administra, o de sus reglas o reglamentos". *Asociación de Maestros v. Comisión,* supra, pág. 93. (Énfasis nuestro). Estas reglas son utilizadas por las agencias administrativas "con el propósito de dar uniformidad a sus propios procesos, pautar la discreción administrativa u otros fines

internos". Estas reglas, no tienen que ser aprobadas mediante el procedimiento reglamentario dispuesto en la LPAUG, supra.

El Tribunal Supremo aclaró que una regla no legislativa no puede ser más específica que la ley o reglamento que ejecuta. En *Asociación de Maestros v. Comisión,* nuestro Alto Foro expresó lo siguiente:

> Por último, y debido a la pertinencia que tienen para el caso de autos, debemos mencionar lo resuelto en algunas jurisdicciones norteamericanas en cuanto al aspecto legal de las susodichas reglas interpretativas. En *Gilbert v. State Dept. of Fish and Game*, 803 P.2d 391, 396–397 (Alaska 1990), el Tribunal Supremo de Alaska invalidó una regla por considerar que no caía bajo la categoría de regla interpretativa *debido a que la regla hacía más específica la ley ejecutada o administrada, y afectaba los derechos de la ciudadanía.* Ese caso dispuso, además, que la agencia no podía invocar dicha regla hasta tanto se llevaran a cabo los procedimientos de reglamentación.
>
> De igual forma, en *New England Whitewater Ctr. v. D.I.F.W.*, 550 A.2d 56, 61–64 (Me. 1988), el Tribunal Supremo de Maine decretó que ***una regla no puede ser interpretativa si hace más específica la ley que administra la agencia.***
>
> [...]
>
> *Asociación de Maestros v. Comisión,* supra, pág. 94-95.
> (Énfasis Nuestro).

Ahora bien, el Capítulo II de la LPAUG, supra, recopila la normativa que enmarca la práctica de la reglamentación. La reglamentación y las reglas legislativas deberán cumplir con cuatro requisitos básicos: (1) notificar al público la reglamentación que se aprobará; (2) proveer oportunidad para la participación ciudadana, que incluya vistas públicas cuando sea necesario u obligatorio; (3) presentar la reglamentación ante el Departamento de Estado para la aprobación correspondiente; y, (4) publicar la reglamentación aprobada. *Sierra Club v. Junta de Planificación,* supra, pág. 606; *Mun. de Toa Baja v. D.R.N.A.*, 185 DPR 684, 694 (2012).

Cónsono con el primer requisito, la Sección 2.6 de la LPAUG, supra, sec. 9616, indica que la agencia mantendrá disponible para inspección un expediente oficial con toda la información relacionada a una propuesta de adopción de regla o reglamento, así como el adoptado o enmendado.

Por su parte, el segundo requisito constituye uno de los elementos primordiales del proceso de reglamentación administrativa. Las agencias están obligadas a facilitar la participación de aquellos ciudadanos cuyos intereses se puedan afectar por la actuación administrativa, para evitar aplicar su pericia a una información que no refleje la situación real de dichos ciudadanos. *Comisión Ciudadanos v. G.P. Real Property*, 173 DPR 998, 1011 (2008). Para cumplir con la política de participación ciudadana, la Sección 2.2 de la LPAU, 3 LPRA sec. 9612, dispone que la agencia proveerá oportunidad para someter comentarios por escrito durante un término no menor de treinta (30) días, contados a partir de la fecha de la publicación del aviso. *Íd.*

De esta manera, la LPAUG, supra, provee oportunidad al ciudadano afectado por la regla o reglamento para que pueda participar del procedimiento administrativo, ya sea mediante la aportación de comentarios o mediante la participación en vistas públicas. Sin embargo, cabe reseñar que la celebración de vistas públicas es discrecional, salvo que la Ley Orgánica las estime mandatorias.

Consecuentemente, en observancia del cuarto requisito, la Sección 2.8 (d) de la LPAUG, supra, sec. 9618, establece que, luego de aprobar el reglamento, el Secretario de Estado publicará en dos (2) periódicos de circulación general "una síntesis del contenido de cada reglamento radicado, con expresión de su número, fecha de vigencia y agencia que lo aprobó. Esta publicación se llevará a efecto dentro de los veinticinco (25) días siguientes a la fecha de su

radicación". Así pues, el Departamento de Estado es la agencia facultada para darle publicación a una regla o reglamento aprobado conforme a la LPAUG, supra.

Lo cierto es que estos requisitos son de ineludible cumplimiento. *Mun. de Toa Baja v. D.R.N.A.*, supra, pág. 694; *Centro Unido Detallistas v. Com. Serv. Púb.*, 174 DPR 174, 184 (2004). El Tribunal Supremo de Puerto Rico ha establecido que "el cumplimiento de ese proceso es indispensable para poder reconocerle fuerza de ley a la regla promulgada, ya que ello forma parte de las garantías procesales que permean todo el estatuto". *Sierra Club v. Junta de Planificación*, supra, pág. 606; *Centro Unido Detallistas v. Com. Serv. Púb.*, supra, pág. 183.

Así, el incumplimiento con estos requisitos permite a cualquier persona impugnar de su faz una regla legislativa o reglamento aprobado por una agencia. LPAUG, supra, sec. 9617; *Sierra Club v. Junta de Planificación*, supra, pág. 606; *Mun. de Toa Baja v. D.R.N.A.*, supra, pág. 695. Cualquier acción para impugnar la validez de su faz de una regla o reglamento deberá iniciarse en el Tribunal de Apelaciones dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento. Sección 2.7 (b) de la LPAUG, supra, sec. 9617.

### III.

Los peticionarios del caso impugnan ante esta Curia los **Memorandos 2025-14 y 2025-14 Enmendado**, emitidos por la parte recurrida los días 29 de junio de 2025 y 16 de julio de 2025, respectivamente. Aducen, en apretada síntesis, que los memorandos son un esfuerzo *ultra vires* de reglamentación administrativa. Nos solicitan, por lo tanto, que declaremos los mismos *nulos ab initio*, y paralicemos los efectos de estos. Es la contención de los peticionarios que, a través de estos memorandos, la Comisión les ha impuesto nuevas obligaciones, sin haber sido

sometidos por el crisol reglamentario correspondiente. *No les asiste la razón.*

Antes de adjudicar los méritos de los argumentos presentados por los peticionarios sobre como los memorandos en cuestión son irrazonables, arbitrarios, ilegales y carentes de validez jurídica por constituir una extralimitación de las facultades de la Comisión, nos vimos obligados a auscultar – como nos corresponde – nuestra jurisdicción en el asunto. Esto, ya que los peticionarios recurren de *memorandos administrativos,* los cuales, como norma general, *no son revisables ante este Foro.* La LPAUG, supra, y nuestro Reglamento, según mencionáramos previamente, disponen que serán revisables ante este Tribunal las resoluciones finales y reglamentos administrativos. Por todo lo cual, nos vimos compelidos a enfrentar la siguiente interrogante: ¿son los memorandos impugnados, *de facto,* un ejercicio reglamentario sobre el cual podamos asumir jurisdicción revisora?

Si nuestra evaluación del expediente, los documentos que obran en autos y los argumentos de las partes nos inclinaran a interpretar favorablemente la posición de los peticionarios, tendríamos jurisdicción para atender el asunto, ya que este es el Foro correspondiente para impugnar los reglamentos administrativos o resoluciones finales. Sin embargo, con relación a la mencionada interrogante, respondemos *en la negativa.* Veamos.

Luego de una somera lectura de los memorandos, no albergamos duda que estos no constituyen un dictamen final ni interlocutorio de la Comisión. Las órdenes interlocutorias son aquellas que se emiten durante los procesos administrativos que se desarrollan por etapas, y no sean finales. La LPAUG, supra, establece una serie de criterios necesarios para que una orden o resoluciones pueda ser catalogada final, como la inclusión de determinaciones de hechos, conclusiones de derecho, advertencias

de revisión, entre otros. Lo cierto es que, de estos memorandos, nada de lo previo surge. Por ello, concluimos que los memorandos no son resoluciones administrativas que, bajo ese crisol, podamos revisar.

Ahora bien, los memorandos objetos de la controversia, según esbozado en su Introducción, buscan asegurar el "fiel cumplimiento con la Ley y con los respectivos reportes de ingresos".[5] La Ley a la que hace referencia la Comisión es la Ley Núm. 11, supra. Las directrices de este memorando establecen, en esencia, instrucciones para rendir una planilla quincenal, en la que los operadores de máquinas de juegos de azar rendirán la información financiera de estas. Además, establece el método para efectuar el pago del impuesto aplicable de veintidós punto cinco por ciento (22.5%).

Según explicáramos previamente, la Ley Núm. 11, supra y la Ley Núm. 81, supra, les impone a los operadores de máquinas de juegos de azar la responsabilidad de informar quincenalmente sus ganancias, así como la de tributar el veintidós punto cinco por ciento (22.5%) de las mismas.

Sin embargo, los peticionarios se amparan – entre otros – al Artículo 2.2 de la Ley Núm. 22, supra, sec. 982a, la cual faculta a la Comisión para adoptar los reglamentos necesarios para la recaudación de impuestos, de conformidad con la LPAUG, supra. Por otro lado, la Comisión riposta al amparo de la Sección 10 de la Ley Núm. 11, supra, sec. 84f, la cual responsabiliza a la recurrida con establecer los procesos necesarios para refrendar el impuesto mediante informes quincenales. Concedemos que una lectura de ambos estatutos, en efecto, podría hilvanar ambos argumentos, de manera honesta. Por ello, resulta necesario analizar el contenido de lo mismo, no solo a la luz de las directrices estatutarias al

---

[5] Apéndice del recurso, Anejos 1 y 2.

respecto, sino a la normativa jurídica que encausa lo que constituye una regla legislativa o reglamento. Para, de esta manera, concluir si lo dispuesto en estos memorandos requería el proceso de reglamentación, a la luz de la LPAUG, supra, la jurisprudencia interpretativa y los estatutos aplicables a esta controversia.

Como reseñáramos previamente, nuestro ordenamiento jurídico define una *regla legislativa* como aquella que impone responsabilidades con fuerza de Ley de manera general. Por su parte, una *regla no legislativa* busca uniformar procesos para el cumplimiento de la Ley. Esto, en unión a la definición de la LPAUG, supra, sobre la Regla y la Reglamentación, nos inclina a interpretar que *los memorandos no constituyen reglamentación.*

Si bien es cierto que estas directrices imponen una serie de procesos y responsabilidades sobre los peticionarios que no tenían antes, la finalidad de los mismos es cumplir con lo dispuesto en las Leyes previamente discutidas. El proceso adoptado por vía de los memorandos pudo haber requerido lo mismo, y variar en su método. Es decir, el mecanismo utilizado para informar las ganancias – que en este caso es una planilla en el formato de Excel – no es el que tiene fuerza de Ley, sino el acto de documentar e informar quincenalmente las mismas. Encontramos altamente persuasivo el argumento de la Comisión, respecto a la responsabilidad que tienen los peticionarios para rendir estos informes y tributar el veintidós punto cinco por ciento (22.5%) de sus ganancias, puesto que, independiente a los memorandos, es su responsabilidad legal cumplir con ello.

Justipreciamos que los memorandos impugnados son reglas no legislativas que tienen el fin de homogenizar el cumplimiento de la Ley. El caso de *Asociación de Maestros* v. *Comisión,* supra, dispone que una regla no legislativa no podrá ser más específica

que la Ley que ejecute. Para establecer el mecanismo para cumplir con la responsabilidad de informar quincenalmente las ganancias y realizar los pagos tributarios, naturalmente, la Comisión deberá instaurar procedimientos que antes no se exigían. Por todo lo cual, concluimos que ninguno de los requisitos dispuestos en los memorandos añade o modifica, en contravención al caso *Asociación de Maestros* v. *Comisión,* supra, los derechos y las obligaciones de los peticionarios.

Ahora bien, por recurrir los peticionarios mediante el presente recurso de unos memorandos administrativos, sobre los cuales este Tribunal no tiene facultad revisora, nos vemos obligados a desestimar el mismo.

**IV.**

Por los fundamentos antes esbozados, *desestimamos el presente recurso por falta de jurisdicción.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Sánchez Ramos emite voto de conformidad con las siguientes expresiones:

Aun de entenderse (erróneamente, según arriba explicado) que, para adoptar las medidas establecidas en los memorandos, la agencia tenía que utilizar el procedimiento de reglamentación formal contemplado por ley, de todas maneras, no tendríamos jurisdicción para atender en primera instancia el recurso de referencia. Ello pues la ley únicamente nos concede jurisdicción para revisar, en primera instancia, la validez de reglamentación que se adopta utilizando el antedicho procedimiento, cosa que no ocurrió aquí. La revisión inicial de la validez, de su faz, del tipo de actuación administrativa aquí impugnada le corresponde al Tribunal de Primera Instancia, o a la propia agencia en el contexto de adjudicar una defensa en un procedimiento administrativo contra una parte afectada. De hecho, surge del récord que los

recurrentes, antes de presentar el recurso que nos ocupa, en efecto instaron una acción ante el Tribunal de Primera Instancia con el fin de impugnar la validez de los memorandos en controversia, pero optaron por desistir voluntariamente de la misma.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones